**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ORBITZ WORLDWIDE, LLC and TRIP NETWORK, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.:  1:11-cv-08918 |
| vs. | ) ) | Honorable _____ |
| FAREPORTAL, INC. and WK TRAVEL, INC., | ) ) ) | |
| | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**COMPLAINT**

Orbitz Worldwide, LLC and Trip Network, Inc. d/b/a CheapTickets (collectively, "**Plaintiffs**"), by their counsel, Edwards Wildman Palmer LLP, bring this Complaint against Defendants Fareportal, Inc. ("**Fareportal**") and WK Travel, Inc. d/b/a OneTravel ("**OneTravel**") (collectively, the "**Defendants**") alleging the following:

**Nature of Action**

1.     This is an action against each Defendant for federal trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); and in violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (1992), the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (1996), and the common law of the State of Illinois.  Plaintiffs bring this action for trademark infringement, false designation of origin, unfair trade practices, and related offenses based upon Defendants' infringing uses of marks that are identical, or nearly so, to Plaintiffs' federally registered ORBITZ, CHEAPTICKETS, and CHEAP

TICKETS marks, in connection with Defendants' promotion of competitive services through internet keyword advertising. Additionally, this is an action against Defendant Fareportal for promissory estoppel, based on failure by Fareportal to adhere to promises it made to Plaintiffs, on which Plaintiffs relied on to their detriment.

**The Parties**

2.      Plaintiff Orbitz Worldwide, LLC ("**Orbitz**") is a Delaware limited liability company with a principal place of business at 500 West Madison Street, Suite 1000, Chicago, Illinois 60661.

3.      Plaintiff Trip Network, Inc. d/b/a CheapTickets ("**CheapTickets**") is a Delaware corporation with its principal place of business located at 500 West Madison Street, Suite 1000, Chicago, Illinois 60661. CheapTickets is a wholly owned subsidiary of Orbitz.

4.      Defendant Fareportal is a New York corporation with a principal place of business at 213 West 35th Street, Suite 1201, New York, New York 10001. At all times pertinent hereto, Fareportal has directed ongoing and substantial commercial activities toward the State of Illinois and in the Northern District of Illinois, including, without limitation, the County of Cook.

5.      Defendant OneTravel is a Nevada corporation with a principal place of business at 213 West 35th Street, Suite 1302, New York, New York 10001. At all times pertinent hereto, OneTravel has directed ongoing and substantial commercial activities toward the State of Illinois and in the Northern District of Illinois, including, without limitation, the County of Cook.

**Jurisdiction and Venue**

6.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under 15 U.S.C., Chapter 22 – Trademarks), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     This Court has personal jurisdiction over Defendants because the injury of trademark infringement, and the related offenses, has been and will be felt mainly in Illinois where Plaintiffs are located, and because Defendants promote their respective services to consumers in Illinois through their own websites and each Defendant's extensive Internet advertising campaign that reaches consumers in Illinois.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claim have occurred in this District and because Defendants were subject to personal jurisdiction in this District at the time the action was commenced.

**Operative Facts**

**I.     Plaintiffs' Business and Trademark Holdings**

9.     Plaintiff Orbitz is a leading global online travel company.  Orbitz uses innovative technology to allow business and leisure travelers to research, plan, and book a broad range of travel products.  Orbitz owns a broad portfolio of travel brands, including Orbitz's flagship e-commerce brand, which operates the website available from the Uniform Resource Locator ("**URL**") http://www.orbitz.com.

10.     Since 2001, Orbitz has been the owner of CheapTickets, operator of the website located at the URL http://www.cheaptickets.com. CheapTickets is a leading

online source of discounted leisure travel products. Through its website, CheapTickets provides travel information to consumers and allows consumers to book plane tickets, hotel accommodations, rental cars, cruise packages, and event tickets.

11. Together, Plaintiffs own an extensive family of famous trademarks for the Orbitz and CheapTickets brands. Plaintiffs have obtained federal registrations for, amongst others, the following marks, many of which are now incontestable:

| MARK | REG. NO. | DATE | SERVICES |
|------|----------|------|----------|
| ORBITZ | 2,858,685 | 06/29/2004 | Travel agency services |
| *ORBITZ* | 2,799,051 | 12/23/2003 | Travel agency services |
| ORBITZ.COM | 2,951,983 | 05/17/2005 | Travel agency services |
| ORBITZ AND GO | 3,104,827 | 06/13/2006 | Travel agency services |
| ORBITZ GAMES | 3,158,430 | 10/17/2006 | Entertainment services |
| ORBITZ PRICE ASSURANCE | 3,634,156 | 06/09/2009 | On-line price monitoring |
| CHEAP TICKETS | 2,021,749 | 12/10/1996 | Travel agency services |
| *CheapTickets* | 2,722,243 | 06/03/2003 | Travel agency services |
| CHEAPTICKETS.COM | 2,665,841 | 12/24/2002 | Travel agency services |

(collectively, along with all other similar marks in which Orbitz and its family of brands have common-law trademark rights, the "**Protected Marks**"). The registration certificate for each of these marks is attached here as composite **Exhibit 1**.

12.     Plaintiffs and their predecessors-in-interest have used the Protected Marks in connection with, *inter alia*, providing travel, lodging, and booking services, continuously since at least as early as the respective registration dates listed above, and far prior to the acts of Defendants complained of herein.

13.     As a result of extensive use and promotion by Plaintiffs of the Protected Marks, Plaintiffs now own valuable goodwill that is symbolized by these marks. The marks have come to be associated in the minds of consumers throughout the country with Plaintiffs' services, and the use of the Protected Marks substantially increases the marketability of travel, reservation, and booking services rendered by Plaintiffs through their Orbitz.com and CheapTickets.com websites.

## II.     Defendants' Business Operations

14.     Defendant Fareportal owns and operates a collection of brands that offer both consumer-facing and trade travel services, including CheapOair, CheapOstay, Hotel Pricer, and Fare Buzz.

15.     CheapOair and CheapOstay are web-based businesses, operating from the URLs http://www.cheapoair.com, and http://www.cheapostay.com, respectively. As their names suggest, these sites are purveyors of discount travel products, namely airline tickets and hotel room bookings, respectively. As such, CheapOair.com and CheapOstay.com are direct competitors of Orbitz and CheapTickets, offering similar travel products through similar means to the business- and leisure-traveling public.

16.     Upon information and belief, Defendant OneTravel owns and operates a similar web-based travel site from the URL http://www.onetravel.com.  OneTravel offers discounted travel products, including airline tickets, hotel room booking, and rental car reservations.  OneTravel is thus also a competitor of Orbitz and CheapTickets.

17.     Upon information and belief, Mr. Werner Kunz, the current Chief Executive Officer of corporate Defendant OneTravel, was previously and at times relevant to this lawsuit, the Chief Strategy Officer for corporate Defendant Fareportal.

**III.    Background on Internet Advertising; History Between the Parties**

18.     "Keyword advertising" refers to any online advertising that is linked to specific words or phrases, such that advertisements of the advertiser will appear in sponsored search results when the targeted keyword is searched by online users.  So, for example, if an internet user types the generic word "hotel" into an internet search engine such as Google.com, sponsored search results will generally be displayed in positions of prominence at the top and/or side of the page, featuring advertisements by travel services businesses that have made a monetary "bid" on the term "hotel" as a keyword. The very first sponsored result will generally be allocated to the advertiser that has placed the highest bid on the keyword, i.e., the advertiser that has agreed to pay to the search engine operator the highest monetary amount each time an independent user takes a particular action (such as searching a term or clicking on a link in the ad).  Google AdWords, Yahoo! Search Marketing and Microsoft (Bing) AdCenter are currently the most popular keyword advertising programs in the U.S.

19.     At least as early as March of 2011, Defendant Fareportal began a concerted and systematic effort to use the Protected Marks in its Internet keyword

advertising campaigns for the CheapOair and CheapOstay brands. Without the consent or authorization of Plaintiffs, Fareportal began purchasing some or all of the Protected Marks as advertising keywords on the Google.com, Yahoo.com, and Bing.com search engines. As a result of Fareportal's keyword purchases, when a user inputs certain federally registered Protected Marks—such as ORBITZ, CHEAPTICKETS, or CHEAP TICKETS—into these search engines, advertisements for Fareportal's competing travel services websites, CheapOair.com and CheapOstay.com, appear prominently as sponsored search results.

20.     Fareportal goes far beyond the purchase of keywords, because it also uses the Protected Marks (a) within the headlines and text of sponsored search result advertisements, (b) in the title and source code of its websites, and/or (c) in infringing subdomain names, all to misleadingly identify Fareportal's own services. These unauthorized uses of the Protected Marks are clearly intended to cause consumer confusion about the source of Fareportal's services and/or the relationship or affiliation between Fareportal and Plaintiffs.

21.     At least as early as March 2011, Defendant OneTravel began to engage in a nearly identical pattern of infringing behavior in the course of advertising for its own competing travel services. Upon information and belief, OneTravel, like Fareportal, also purchases some or all of the Protected Marks as keywords for the Google, Yahoo!, and Bing search engines and uses Protected Marks within the text of the advertisements generated by searches for those keywords and within infringing subdomain names.

22.     On April 18, 2011, after Plaintiffs learned of Fareportal's wrongful and unauthorized use of the Protected Marks, counsel for Plaintiffs wrote to Fareportal,

putting Fareportal on notice of Plaintiffs' trademark rights, and demanding that Fareportal cease and desist from all unauthorized use of the Protected Marks in connection with the offering or promotion of online travel services, including use of the Protected Marks in any online advertising or as part of a URL. Plaintiffs' letter of April 18th, along with the Exhibits thereto, is attached as **Exhibit 2**.

23.    Acting as Chief Strategy Officer of Fareportal, Mr. Kunz promptly responded to Plaintiffs' letter on April 20, 2011. In a brief letter, Mr. Kunz assured Plaintiffs that Fareportal had stopped "all key word bidding" containing the Protected Marks, "effective April 20, 2011." Fareportal's letter of April 20th is attached as **Exhibit 3**.

24.    Despite Fareportal's promises, in the fall of 2011, Plaintiffs learned that Fareportal had continued or resumed the unauthorized use of the Protected Marks in its online advertising. On October 18, 2011, Plaintiffs, through counsel, sent a follow-up letter to Fareportal, renewing the demand that Fareportal stop its wrongful and infringing practices. (Plaintiffs' letter of October 18th and the exhibits thereto are attached as **Exhibit 4**.) Plaintiffs attached the results of recent searches for the ORBITZ, CHEAPTICKETS, and CHEAP TICKETS marks conducted in the Google, Yahoo!, and Bing search engines. Those results showed extensive use of Protected Marks by Fareportal; they also showed prominent, headline use by Fareportal of a facsimile of the ORBITZ mark in sponsored search ads:



Orbit Hotels - 50% Off
Fall Sale - $15 Off All Hotels. Save up to 50% at CheapOstay®.
www.CheapOstay.com/Hotels

25.     As Plaintiffs pointed out in the October 18 letter, the ongoing use of the Protected Marks in Fareportal's advertising copy and URLs continued to give the false impression that Fareportal was associated with or approved of by Plaintiffs and thus constituted an infringement of the Protected Marks.  Moreover, the term "Orbit" has no meaning in the travel industry, and thus the only reasonable assumption is that Fareportal incorporated that term into its keyword ad headings with an intent to confuse consumers into believing the relevant ad was placed by Orbitz.

26.     On October 21, 2011, counsel for Plaintiffs received another response from Fareportal.  In the letter, Fareportal stated: "[w]e hereby confirm that Fareportal immediately terminated any use on our websites of all Protected Trademark names you referred to in the abovementioned letter as of October 21st, 2011."  But this brief response did not address the brunt of the conduct complained of in Plaintiffs' October 18th letter, namely use of the Protected Marks in Fareportal's online advertisements and URLs. The letter was signed by Brijen Rajput in his capacity as Senior Vice President Online Marketing.  Fareportal's letter of October 21, 2011, is attached as **Exhibit 5**.

27.     On October 24, 2011, counsel for Plaintiffs sent a third letter to Fareportal. In the October 24th letter, Plaintiffs objected to Fareportal's continuing prominent use of the Protected Marks in online advertisements and URLs.  Plaintiffs demanded immediate written confirmation that Fareportal would comply with Plaintiffs' earlier demands. This October 24 letter is attached as **Exhibit 6**.

28.     On October 25, 2011, counsel for Plaintiffs received a response from Fareportal.  In its response, Fareportal "confirm[ed] again that Fareportal immediately terminated any use on [its] websites of all Protected Trademark names referred to in

[Plaintiffs'] letter dated October 18, 2011." Fareportal attached to its letter the "results of [its] recent investigation," which consisted of screenshots showing the first page of search results for the terms "orbitz" and "orbitz flights" conducted in the Google, Yahoo!, and Bing search engines, as well as a Google search for the term "cheaptickets." These images did not show any obvious advertisements for Fareportal. Fareportal's letter of October 25th and the exhibits thereto are attached as **Exhibit 7**.

29.     Plaintiffs have not previously directly contacted Defendant OneTravel. However, as mentioned above, it is Plaintiffs' understanding, based upon information and belief, that Mr. Kunz, the former Chief Strategy Officer for Defendant Fareportal, is now employed as Chief Executive Officer of Defendant OneTravel. Mr. Kunz signed Fareportal's response to Plaintiffs' April 18th letter and thus has actual knowledge of Plaintiffs' complaints regarding the use of the Protected Marks in the text of online keyword advertising.

**III.     Acts of Infringement**

30.     As of the date of filing of this Complaint, Fareportal and OneTravel continue to use the Protected Marks in their respective online advertisements, as detailed below.

**A.     Defendant Fareportal's Infringement of the Protected Marks**

31.     As mentioned above, use of the Protected Marks in Fareportal's online advertising campaign extends well beyond the mere purchase of the marks of keywords. Fareportal is using the Protected Marks (a) within the headlines and text of sponsored search result advertisements, (b) in the title and source code of its websites, and (c) in infringing subdomain names. Beginning in April, 2011, Fareportal included the ORBITZ

mark within the text of its sponsored advertisements. Fareportal also included the ORBITZ mark as part of spurious domain names displayed in those ads. When a Google user searched the mark "ORBITZ,"



he or she was shown the following ad:

Ads

**Cheap Flights Tickets**
orbitz.cheapoair.com
cheapoair.com is rated ★★★★★
Book Cheap Flight Tickets on This
Site. Save BIG During $15 Off Sale!

See your ad here »

Note, however, that the domain name "orbitz.cheapoair.com" does not actually exist; users clicking on the ad above were simply redirected to the main CheapOair.com website.

32. Like the ORBITZ mark, Fareportal also includes the CHEAP TICKETS mark in keyword advertisements for the CheapOair brand and even describes itself as "THE OFFICIAL SITE FOR CHEAP TICKETS." Fareportal also flagrantly incorporates the CHEAPTICKETS mark into an infringing subdomain, CHEAPTICKETS.cheapoair.com, and then displays the text of the infringing domain as part of sponsored keyword ads and in the page title and URL shown to visitors to the CheapOair site.

33. For example, currently, when a Google.com user searches the mark "CHEAP TICKETS,"

11



he or she will be shown a sponsored keyword advertisement similar to the one displayed

below (which is an actual Fareportal sponsored Google.com search ad for CheapOair):

**Cheap Tickets** - 65% Off - The Official Site for **Cheap Tickets**
cheaptickets.cheapoair.com - ★★★★★ 159 seller reviews
Save 65% + Get $15 Off. Book Now!
Cheap Flights - 65% Off - Cheap Airfares from $10 - Top 25 Travel Deals

Then, when the same user clicks on the link in the keyword ad above, he or she will be

directed to the CheapOair.com site, where the Protected Marks are displayed, again and

again, in the page title, in the URL, in the tab title and again as part of the search

functionality. This is how the site appeared to users on December 13, 2011:



34.     In addition to the ORBITZ mark; Fareportal makes unauthorized use of

other Protected Marks by similarly placing keyword advertising using spurious domain

names incorporating the Protected Marks. So, for example, the same Google.com search

on "cheap tickets" noted above will also return an ad similar to the one shown below,

which uses facsimiles of the CHEAP TICKETS mark in the headline, ad text and apparent domain (again, an actual Fareportal sponsored search ad appearing on December 13, 2011):



Here again, however, the identified www.cheapoair.com/Cheap-Tickets domain does not actually exist; when a user clicks on the ad above, he or she will be simply be directed to the CHEAPTICKETS.cheapoair.com subdomain.

35.     Fareportal engages in the same practices on search engines other than Google.  Currently, when a Yahoo.com user searches the mark "CHEAPTICKETS," he or she will be shown as the top search result an ad similar to the following (yet another actual Fareportal sponsored search ad appearing on December 13, 2011):

Yet again, this ad uses a spurious domain; "Cheap-Tickets.CheapOair.com" does not exist, so users clicking on the sponsored ad above are redirected to the main CheapOair.com website.

36.     None of the Fareportal advertisements or uses of the Protected Marks detailed above are for Plaintiffs' services or were made with Plaintiffs' permission.

**B.      Defendant OneTravel's Infringement of the Protected Marks**

37.     As with Fareportal, OneTravel's sponsored search result advertisements include prominent, infringing use of the ORBITZ and CHEAP TICKETS marks in the advertising copy, headlines and spurious domains, and as part of infringing URLs directed to pages within OneTravel's website. The following are examples of actual OneTravel.com sponsored search ads that appear when the registered marks ORBITZ and CHEAP TICKETS are searched on various top search engines:



38.     And, like Fareportal, OneTravel has its own infringing subdomain, CHEAPTICKETS.onetravel.com.

39.     None of the OneTravel advertisements or uses of the Protected Marks detailed above are for Plaintiffs' services or were made with Plaintiffs' permission.

**COUNT I (AGAINST ALL DEFENDANTS)**
**VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114**

40.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-39 of this Complaint, as though fully stated herein.

41.     Defendants' aforesaid unauthorized use of the Protected Marks is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' travel services and falsely and deceptively represents Defendants' travel services as being sponsored by, authorized by, or provided by Plaintiffs, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

42.     Defendants committed their wrongful actions with the intent to mislead and misdirect consumers.  Defendants' wrongful conduct has deprived, and will continue to deprive, the Plaintiffs of opportunities for controlling and expanding their goodwill.

43.     This is an exceptional case and Plaintiffs are entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

44.     Plaintiffs are being damaged and will continue to be damaged by this conduct and are without an adequate remedy at law to compensate them for Defendants' wrongful acts.

**COUNT II (AGAINST ALL DEFENDANTS)**
**VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

45.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-44 of this Complaint, as though fully stated herein.

46.     Section 1125(a)(1)(A) of the Lanham Act provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any

15

> word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which—
> ….
> (A) is likely to cause confusion, or to cause mistake, or to
> deceive as to the affiliation, connection or association of
> such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services or
> commercial activities by another person….

47.     Defendants' aforesaid unauthorized use of the Protected Marks throughout their advertising materials and in interstate commerce falsely suggests that they are associated with Plaintiffs, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.     Defendants' aforesaid unauthorized use of the Protected Marks throughout their advertising materials and in interstate commerce constitutes a false designation of origin and a false or misleading description and representation of fact which is likely to cause initial interest confusion, actual confusion, and mistake, and to deceive as to the affiliation, connection, or association of Defendants with the Plaintiffs and as to the origin, sponsorship, or approval of Defendants' products and services by the Plaintiffs, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.     This is an exceptional case and Plaintiffs are entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

50.     Defendants' wrongful acts are causing damage to Plaintiffs and Plaintiffs are without an adequate remedy at law to compensate them for Defendants' wrongful activity.

## COUNT III (AGAINST ALL DEFENDANTS)
## STATE UNFAIR COMPETITION – VIOLATION OF THE
## UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1 *et seq.*

51.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-50 of this Complaint, as though such allegations were set forth at length.

52.     Defendants' unauthorized, willful use of the Protected Marks is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' travel services and falsely and deceptively represents Defendants' travel services as being sponsored by, authorized by, or provided by, Plaintiffs, and constitutes deceptive practices and unfair competition in violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (1992).

53.     Defendants' aforesaid acts result in Defendants' unjust enrichment.

54.     Defendants' wrongful acts are causing damage to Plaintiffs and Plaintiffs are without an adequate remedy at law to compensate them for Defendants' wrongful activity.

## COUNT IV (AGAINST ALL DEFENDANTS)
## STATE UNFAIR COMPETITION – VIOLATION OF CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 *et seq.*

55.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-54 of this Complaint, as though such allegations were set forth at length.

56.     Defendants' unauthorized, willful use of the Protected Marks, in advertising and promotional materials directed to the market generally, is deceptive and unfair and has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Defendants' products and services; is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' travel services; falsely and deceptively represents Defendants' travel services as being sponsored by, authorized by, or provided by Plaintiffs; and constitutes deceptive practices and unfair competition in violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (1996).

17

57.     Defendants' aforesaid acts result in Defendants' unjust enrichment.

58.     Defendants' wrongful acts are causing damage to Plaintiffs and Plaintiffs are without an adequate remedy at law to compensate them for Defendants' wrongful activity.

## COUNT V (AGAINST ALL DEFENDANTS)
## STATE UNFAIR COMPETITION –
## VIOLATION OF ILLINOIS COMMON LAW

59.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-58 of this Complaint, as though such allegations were set forth at length.

60.     Defendants' unauthorized, willful use of the Protected Marks is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' travel services and falsely and deceptively represents Defendants' travel services as being sponsored by, authorized by, or provided by, Plaintiffs, and constitutes unfair competition under the common law of the State of Illinois.

61.     Defendants' aforesaid acts result in Defendants' unjust enrichment.

62.     Defendants' wrongful acts are causing damage to Plaintiffs and Plaintiffs are without an adequate remedy at law to compensate them for Defendants' wrongful activity.

## COUNT VI (AGAINST DEFENDANT FAREPORTAL, INC.)
## PROMISSORY ESTOPPEL

63.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-62 of this Complaint, as though such allegations were set forth at length.

64.     In the April 20th response letter, Defendant Fareportal, by and through its Officer, Mr. Kunz, made a clear and unambiguous promise to Plaintiffs to discontinue all

use of the Protected Marks, including in online advertising efforts for their travel services.

65. Plaintiffs relied on upon this promise in not bringing suit against Fareportal prior to this action.

66. Plaintiffs' reliance was expected and reasonably foreseeable by Fareportal.

67. Plaintiffs' reliance on Fareportal's promise was to their detriment, as Fareportal has continued to infringe the Protected Marks since promising to desist from doing so and has thereby damaged Plaintiffs' goodwill.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Orbitz Worldwide, LLC and Trip Network, Inc. pray for judgment against Defendants as follows:

A. That this Court grant preliminary and permanent injunctive relief, pursuant to 15 U.S.C. § 1116, against Defendants Fareportal and OneTravel and their respective officers, partners, agents, servants, employees, sales representatives, distributors, parents, subsidiaries, related companies, heirs, predecessors, successors, assigns, and attorneys, and all others in active concert or participation with any of them, enjoining them from:

i. Using, whether directly or indirectly, ORBITZ, CHEAPTICKETS, CHEAP TICKETS, or any other mark or word similar to any of the Protected Marks, in a manner which is likely to cause confusion or mistake, or to deceive, in connection with online travel services, including, without limitation, in any advertising or as part of a domain name;

      ii.  Doing any other act or thing likely to confuse, mislead, or deceive others into believing that Fareportal or OneTravel, or any of their respective products or services emanate from Plaintiffs, or are connected with, sponsored by, or approved by Plaintiffs or any of its family of brands;

      iii.  Aiding or assisting any person in engaging in any of the acts prohibited by subsections (i) and (ii) above;

B.    For an order directing each Defendant to file with this Court and serve on Plaintiffs within three (3) days after service of an injunction a written report under oath setting forth in detail the manner and form in which each Defendant has complied with the injunction pursuant to 15 U.S.C. § 1116;

C.    For an order requiring Defendants and all those in privity with them to surrender for destruction all materials incorporating or reproducing any of the Protected Marks, in accordance with 15 U.S.C. § 1118, and the equitable power of this Court to enforce the common law of Illinois;

D.    For an accounting of the gains and profits realized by each of the Defendants from their respective wrongful acts of infringement, unfair competition, and/or promissory estoppel;

E.    For an order requiring Defendants to pay to Plaintiffs:

    a.  statutory damages;

    b.  punitive damages;

    c.  treble damages;

    d.  actual damages;

e.  all profits wrongfully derived by Defendants from the use of the Protected Marks;

f.  Plaintiffs' costs and expenses, including without limitation reasonable attorneys' fees; and

g.  prejudgment interest at the maximum legal rate;

F.  That this case be deemed "exceptional" within the meaning of the Lanham Act, 15 U.S.C. § 1117; and

G.  For such other and further relief as this Court deems just and equitable.

### JURY DEMAND

Plaintiffs hereby demand and request a trial by jury on all issues so triable.

[SIGNATURE PAGE FOLLOWS]

Dated: December 15, 2011      Respectfully submitted,

ORBITZ WORLDWIDE, LLC

TRIP NETWORK, INC.

_____
By:  One of Their Attorneys

John S. Letchinger
Jami A. Gekas
Benjamin J. Stein
Edwards Wildman Palmer LLP
225 W. Wacker Drive, Suite 2800
Chicago, Illinois  60606-1229
(312) 201-2000